# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REAMEL CURTIS, | 1:15-cv-00553-LJO-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DENIED |
| vs. | |
| KELLI HARRINGTON, *et al.*, | (ECF No. 35) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN 21 DAYS |

## I. INTRODUCTION

Curtis Reamel ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's Eighth Amendment claim for failure to protect against Defendants Gonzalez and Bugarin ("Defendants"). (ECF Nos. 13, 15, 20). Plaintiff's First Amended Complaint, (ECF No. 12), alleges that he was wrongfully transferred to the "3-A" facility at California State Prison-Corcoran ("CSP-Corcoran"), where Plaintiff's documented enemy (inmate Butler) was being housed. Plaintiff was later assaulted and injured by inmate Butler.

\\\
\\\
\\\

1

## II. PROCEDURAL BACKGROUND

Plaintiff filed the Complaint commencing this action on April 10, 2015. (ECF No. 1.) The Court screened the Complaint on April 12, 2016 pursuant to its authority in 28 U.S.C. § 1915A, and granted Plaintiff leave to file a First Amended Complaint ("1AC"). (ECF No. 9.)

On June 17, 2016, Plaintiff filed the 1AC. (ECF No. 12.) The Court screened the 1AC on September 9, 2016, and found cognizable claims against Defendants Bugarin and Gonzales for failure to protect in violation of the Eighth Amendment to U.S. Constitution. (ECF No. 13.) The Court again granted Plaintiff leave to file an amended complaint or file notice electing to stand on the 1AC subject to recommendations to the assigned District Judge. (*Id*.) Plaintiff filed a notice electing to stand on the 1AC. (ECF No. 14.) Findings and recommendations consistent with the Court's screening order, (ECF No. 15), were adopted on December 6, 2016. (ECF No. 20.)

On May 2, 2017, an initial scheduling conference was held in this case. (ECF No. 32.) Defendants asserted that any and all injuries Plaintiff has suffered were caused by a third-party not named in this lawsuit. Defendants indicated that their initial disclosures would indicate to Plaintiff the person(s) responsible for his transfer to Facility 3-A. The Court indicated that amendment to the 1AC may be necessary to name the correct Defendants. Plaintiff indicated that he would like to go forward with the case against Defendants Bugarin and Gonzales. Following the scheduling conference, the Court set deadlines for non-expert discovery (November 17, 2017) and dispositive motions (December 20, 2017). (ECF No. 34.)

On June 14, 2017, Defendants Bugarin and Gonzales filed the instant motion for summary judgment. (ECF No. 35.) Defendant Bugarin asserts that he is entitled to summary judgment because he was not personally involved in Plaintiff's facility transfer, while Gonzales argues that he is entitled to summary judgment based upon Plaintiff's failure to exhaust administrative remedies. Plaintiff has filed a response in opposition to the motion, (ECF No. 44), and Defendants have filed a reply in support, (ECF No. 45).

The Court held a telephonic discovery and status conference on September 12, 2017. In response to defense counsel's argument that Defendant Burgarin did not recommend his

transfer to Facility 3-A, Plaintiff stated that Defendant Burgarin personally escorted him to 3-A. Plaintiff also expressed an intention to amend his complaint in order to add the individuals who recommended his transfer to Facility 3-A. Plaintiff claimed these individuals were identified in the Defendants' pending motion for summary judgment.

On September 18, 2017, Plaintiff filed a motion requesting an amendment to the 1AC in order to add Wade Rasley and Tracy Noland as Defendants in this case. (ECF No. 43.) The motion also stated additional facts regarding Defendant Burgarin's personal involvement. (*Id*.)

On November 20, 2017, the Court denied Plaintiff's motion to amend because Plaintiff did not follow the appropriate procedures for amendment of pleadings. (ECF No. 48.) The Court also gave Plaintiff specific instructions regarding the procedures for filing a motion for leave to file a Second Amended Complaint ("2AC"). (*Id*.)

In a subsequent telephonic status conference on November 27, 2017, Plaintiff again announced his intention to file a motion for leave to file a 2AC. The Court informed Plaintiff that the case had already proceeded late into the discovery schedule and any further delay would likely lessen the likelihood that a motion for leave to file an amended complaint would be granted. Plaintiff indicated that he would file the motion to amend immediately.

As of the date of these findings and recommendations, however, Plaintiff has not filed a motion for leave to file a 2AC.

### III. MATERIAL FACTS RELEVANT TO SUMMARY JUDGMENT[1]

#### A. Plaintiff's Transfer to Corcoran Facility 3-A

At all times relevant to this lawsuit, Plaintiff was an inmate housed at Corcoran State Prison ("Corcoran") in Corcoran, California. (DUSUF1) On October 3, 2011, Plaintiff was involved in a physical altercation with another Corcoran inmate named Butler. (DUSUF2) On October 7, 2011, Plaintiff was involved in another physical altercation with Butler. (DUSUF3) As a result of the October 7, 2011 incident, Plaintiff and inmate Butler were listed as documented non-confidential enemies. (DUSUF4)

---

[1] On summary judgment, the Court considers the facts in a light most favorable to the nonmoving party. As used herein, "DSUF" means Defendants; Statement of Undisputed Facts (ECF No. 35).

3

On January 25, 2012, Plaintiff appeared before a Unit Classification Committee ("UCC") for a program review. (DUSUF5) As part of his responsibilities as a Correctional Counselor during Plaintiff's UCC hearing, Defendant Bugarin recommended that Plaintiff be transferred from Corcoran to California State Prison – Sacramento, with an alternate of Kern Valley State Prison. (DUSUF6) As part of the January 25, 2012 UCC hearing, Defendant Bugarin also recommended that Plaintiff be released to Facility 3-B general population pending transfer review by the Classification Service Representative. (DUSUF7)

On February 6, 2012, the Classification Service Representative endorsed Plaintiff for transfer to the California Substance Abuse Treatment Facility ("SATF"). (DUSUF8) After February 6, 2012, Plaintiff was placed on Corcoran Facility 3-B pending transfer to SATF. (DUSUF9) A Correctional Counselor does not have the authority to move an inmate between facilities without the approval of a full committee or a Correctional Captain. (DUSUF11)

Because Facility 3-B was being converted to a Special Needs Yard ("SNY"), general population inmates were transferred to other facilities. (Plaintiff's declaration, ECF No. 44, pp. 12-13.) On April 5, 2012, Officer Noland requested that Plaintiff be transferred to Facility 3-A. (DUSUF12) On April 5, 2012, Sergeant Rasley approved the pending request to transfer Plaintiff to Facility 3-A. (DUSUF13) Plaintiff was moved to the Facility 3-A facility because "there was not a bus scheduled for him to be transferred along with the rest of the general population." (Plaintiff's declaration, ECF No. 44, pp. 12-13.)

Plaintiff claims that Defendant Bugarin personally escorted Plaintiff to Facility 3-A and told Plaintiff that he would stay there until a bus came to transfer him to his endorsed prison. (*Id*.)

On April 26, 2012, Plaintiff and inmate Butler were involved in another physical altercation in Facility 3-A, and Plaintiff sustained injuries. (DUSUF14; Plaintiff's declaration, ECF No. 44, pp. 12-13.)

### B. Exhaustion of Administrative Remedies

On June 21, 2012, Plaintiff submitted 602 Inmate/Parolee Appeal under the subject "Violated Rights" stating that:

> On 4-5-12 I was cleared by Counselor to go from B Yard to A Yard. The reason being is B Yard is being turned into a SNY Yard and all general population was being moved. Therefore, I got moved to 3A Yard into the same building which a documented enemy was housed. After being on orientation for 3 weeks I was again cleared to come out and program. I came out to program and got into a physical altercation with the documented enemy. I have written several GA-22 forms stating I would like to talk [to] someone with authority Sgt, Lt or Captain. But I got no response to neither of the GA 22s I filed out. Those attempts were done after the incident occurred. I am following the proper procedure per Title 15 when filing a complaint. Thank you.

(CDCR 602 Inmate/Parolee Appeal, ECF No. 35-5, p. 5-7.)

In the "action requested" portion of the appeal, Plaintiff's requested "I would like to receive documents stating that CDCR did indeed make a legitimate mistake by housing me inside the same building with a documented enemy." (*Id.* at 5.)

On August 26, 2012, Plaintiff's appeal was granted at the first level of review. (DUSUF18) Plaintiff has not submitted any other appeals on the issues raised in his lawsuit. (DUSUF19).

### IV. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "Once the moving party meets its initial burden, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

5

for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. "Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment" or make credibility any determinations. *Zetwick*, 850 F.3d at 441 (citing *Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Rule 56 does not require that the absence of any factual dispute. *See Hanon v. Dataproducts Corp*., 976 F.2d 497, 500 (9th Cir. 1992). Rather, there must be no *genuine* issue of *material* fact. *Id*. (emphasis as in original) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick*, 850 F.3d at 441 (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). "On the other hand, the Supreme Court has made clear: 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Id*. (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## V. DEFENDANT BURGARIN'S PERSONAL INVOLVEMENT

Defendant Bugarin argues that he is entitled to summary judgment because Plaintiff cannot demonstrate a triable issue that Defendant Bugarin was personally involved in the violation of his constitutional rights. Defendant Bugarin has submitted uncontroverted evidence indicating that two third-parties requested and approved his transfer to Facility 3-A. (Declaration of J. Bugarin, ¶ 7; Ex. C.) (DUSUF12-13) (indicating that, on April 5, 2012, Officer Noland requested that Plaintiff be transferred to Facility 3-A, and Sergeant Rasley approved the transfer). Defendant Bugarin asks for summary judgment on the ground that Plaintiff cannot demonstrate that Defendant Bugarin was personally involved in the decision to transfer him to Facility 3-A. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing

6

cases for the principle that "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat superior* liability under section 1983").

In response, Plaintiff asserts that Defendant Bugarin was personally involved in his transfer to Facility 3-A because he personally escorted Plaintiff there.

In light of Plaintiff's submission, the Court finds a dispute of fact exists regarding Defendant Bugarin's personal involvement in Plaintiff's transfer. If Defendant Bugarin personally escorted Plaintiff to the yard where Defendant Bugarin knew Plaintiff had a documented enemy, such involvement is sufficient for a jury to find Defendant Bugarin had sufficient involvement in the transfer to be liable.

Defendant Bugarin asks this Court to disregard Plaintiff's assertion regarding Defendant Bugarin's personal involvement in the escort on the ground that this fact was not contained in Plaintiff First Amended Complaint, which is the operative complaint in the case. Defendant Bugarin complains that this is a "new claim," rather than additional facts supporting a current claim. (ECF No. 45 at 3-4.) Defendant relies on Ninth Circuit case law that a party cannot rely on an entirely new theory of liability in opposition to a motion for summary judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (finding no error when the district court refused to allow plaintiffs to proceed with a new theory of liability in opposition to a motion for summary judgment after the close of discovery because it would prejudice the defendant).

The Court declines to disregard Plaintiff's fact about Defendant Bugarin's escort. Plaintiff is permitted to rely upon facts not included in the complaint when opposing a motion for summary judgment. *See* Fed. R. Civ. P. 56; *see also Spicer v. Cascade Health Servs., Inc.*, 279 F. App'x 440, 442 (9th Cir. 2008) (the court may consider matters outside of the pleadings when considering a motion for summary judgment). The Court finds that this allegation is an additional fact in support of the same theory of liability, i.e., that Defendant Bugarin was involved in transferring Plaintiff to a location with a known danger. The Court acknowledges that the line between asserting a new fact in support of a legal theory and asserting a

7

completely new theory of liability is not a clear one. Nevertheless, the Court finds that the additional fact regarding Defendant Bugarin's involvement is not so different from other facts in Plaintiff's complaint regarding Defendant's knowledge of the danger and involvement in the transfer to constitute a completely new theory warranting preclusion. The fact that Defendant Bugarin allegedly escorted Plaintiff is consistent with Plaintiff's allegations in the First Amended Complaint that Defendant Bugarin failed to protect him by subjecting him to a housing assignment with knowledge that it housed an enemy.

Moreover, the Court finds no prejudice to Defendant Bugarin in terms of litigation strategy by permitting Plaintiff to assert the facts regarding Defendant Burgarin's personal involvement at this time. Defendant Bugarin does not describe any prejudice in terms of a failure to take certain discovery based on late disclosure of the new allegations. Indeed, as described above, Plaintiff has described his allegation that Defendant Burgarin is liable because he escorted Plaintiff during court conferences in this case, so this fact is not a surprise to defendant.

Therefore, construing all facts favorably for the non-moving party, the Court recommends that summary judgment should be denied as to Defendant Bugarin.

### VI. EXHAUSTION OF REMEDIES AS TO DEFENDANT GONZALES

Next, Defendant Gonzales argues that summary judgment should be granted in his favor because Plaintiff failed to exhaust his administrative remedies concerning the allegations in the 1AC. The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Exhaustion is "an affirmative defense the defendant must plead and prove." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). Therefore, the burden of demonstrating that a plaintiff failed to exhaust his administrative remedies is carried by the defendants, and the Court utilizes the Rule 56 summary judgment standard to determine whether material facts are disputed. *See*

*id*. ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). If there are material facts in dispute, the court resolves any such disputes in a formal hearing. *See id*. ("If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts.").

Here, there are no material facts in dispute. The parties agree that Plaintiff fully exhausted a grievance regarding his placement in Facility 3-A. (Defendants' motion for summary judgment, ECF No. 35-3, p. 6) ("That grievance was granted at the first level of review on August 26, 2012. (DUF 18.) This exhausted Plaintiff's administrative remedies as to his claim that he was wrongfully placed in the same building as his enemy. *See Brady v. Attygala*, 196 F.Supp.2d 1016, 1020 (C.D. Cal. 2002) (holding that an inmate is not required to appeal a favorable grievance decision before filing suit)"). Defendant Gonzales argues only that this fully exhausted grievance did not encompass the allegations in the 1AC against him.

"A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (providing that a "grievance also need not contain every fact necessary to prove each element of an eventual legal claim"). Rather, the "primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id*. (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), *cited with approval in Jones v. Bock*, 549 U.S. 199, 219, 127 S.Ct. 910 (2007)). A grievance is sufficient if it "it alerts the prison to the nature of the wrong for which redress is sought." *Id*.

As summarized above, Plaintiff submitted 602 Inmate/Parolee Appeal under the subject "Violated Rights" on June 21, 2012, stating that he was "cleared by Counselor to go from B Yard to A Yard (where his documented enemy was housed)" on April 5, 2012. (ECF No. 35-5, p. 5-7.) The grievance continues that Plaintiff was on orientation for three weeks, and then he was "cleared to come out and program." (*Id*.) When Plaintiff came out to program, he had a physical altercation with Butler. (*Id*.) It is undisputed that this appeal is exhausted. (DSUF 18)

Defendant Gonzales contends that this exhausted grievance was insufficient to alert him of the "nature of wrong" alleged, and that the "CDCR was never provided a fair opportunity to adjudicate any claims" against him. (ECF 35-5, p. 6.) According to Gonzales, the nature of the wrong against him is that he failed to respond to Plaintiff's April 5, 2012 notification that Plaintiff was placed in the same building as Butler, whereas the nature of the wrong in the exhausted grievance is "that he was wrongfully placed in the same building as his enemy." (*Id*.)

While the Court acknowledges that the specific allegations as to Defendant Gonzales were not stated in the grievance, the Court finds that the grievance exhausted the claim as to Defendant Gonzales because it was sufficiently related to the matter in the grievance. The nature of the wrong in the exhausted grievance is that Plaintiff was wrongfully placed into Facility 3-A with a documented enemy, and as a result, he sustained injuries from an assault by Butler. Similarly, the allegation against Defendant Gonzales in the 1AC is that Plaintiff attempted to notify him of his wrongful placement in the same facility as a documented enemy, and he was injured as a result of Gonzales' inaction. *See Griffin*, 557 F.3d at 1120 (providing that the "primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.").

Accordingly, the Court recommends that summary judgment be denied as to Defendant Gonzales because Plaintiff sufficiently exhausted his administrative remedies regarding the allegations against Defendant Gonzales in the 1AC.

### VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendants J. Bugarin and J. Gonzales' motion for summary judgment be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be

served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 23, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE