1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9  REAMEL CURTIS,                          Case No. 1:15-cv-00553-LJO-JDP

10          Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                           THAT COURT GRANT DEFENDANTS'
11       v.                                MOTION FOR SUMMARY JUDGMENT

12  J. GONZALES and J. BUGARIN,[1]         OBJECTIONS DUE IN 14 DAYS

13          Defendants.                    ECF No. 66

14

15       Plaintiff Reamel Curtis proceeds without counsel in this civil rights action brought under

16  42 U.S.C. § 1983.  While plaintiff was an inmate at Corcoran State Prison ("Corcoran"), he had

17  physical altercations with another inmate.  Prison officials later transferred plaintiff to a new

18  housing unit at Corcoran, but three weeks later the same inmate attacked plaintiff at his new

19  housing unit.  According to plaintiff, defendant J. Bugarin, a correctional counselor at

20  Corcoran, approved plaintiff's transfer to the new housing unit and escorted him there, putting

21  plaintiff at risk.  Plaintiff alleges that defendant J. Gonzales, a correctional officer who

22  supervised the new housing unit, ignored plaintiff's warnings that his safety was at risk.

23       Defendants move for summary judgment.  Plaintiff presents no evidence that Bugarin

24  approved plaintiff's transfer to the new housing unit and, although plaintiff alleges that

25  Bugarin personally escorted him to the new unit, this, without more, cannot show Bugarin's

26

27  [1] Defendant J. Bugarin's last name was captioned "Burgarin" in the case caption.  The
    undersigned will direct the clerk of court to amend the caption to reflect the correct spelling of
28  his name.

1

deliberately indifference to plaintiff's safety. As regards defendant Gonzalez, plaintiff presents no evidence that he warned Gonzales of any safety risk. We therefore find that there is no genuine dispute of material fact and recommend summary judgment in defendants' favor.

## I.    Facts[2]

In October 2011, plaintiff had two physical altercations with Butler, another inmate at Corcoran. ECF No. 12 at 7, 14; ECF No. 66-3 ¶ 2-3. As a result, prison officials designated plaintiff and Butler as documented enemies and placed plaintiff in a security housing unit at Corcoran. ECF No. 12 at 19. In December 2011, plaintiff was released to the general population in Facility 3-B at Corcoran. ECF No. 66-4 at 10. In January 2012, Bugarin and two other prison officials recommended that plaintiff be transferred to another prison and that plaintiff stay in Facility 3-B at Corcoran pending his transfer. ECF No. 66-4 at 2, 8. Until April 2012, plaintiff stayed in Facility 3-B, and Butler stayed in Facility 3-A. ECF No. 12 at 19; ECF 66-4 at 10-11.

In April 2012, plaintiff was transferred to Facility 3-A. ECF No. 66-4 at 10-11. Officer Noland, who is not a party to this case, requested plaintiff's transfer to Facility 3-A, and Sergeant Rasley, another nonparty, approved the transfer. ECF No. 66-4 at 2-3, 10-11. Bugarin states in his declaration that as a correctional counselor, he had no authority to move an inmate between facilities, ECF No. 66-4 at 3, and plaintiff presents no evidence to the contrary. Plaintiff also presents no evidence that Bugarin approved plaintiff's transfer from Facility 3-B to Facility 3-A.

The parties dispute whether Bugarin escorted plaintiff to Facility 3-A. Plaintiff states in his declaration that Bugarin personally escorted him to a yard within Facility 3-A on April 5, 2012. ECF No. 77 at 6. According to plaintiff, Bugarin told him during the escort that he would stay in the Facility 3-A yard pending transfer to another prison. *Id*. Bugarin states in his declaration that he did not escort plaintiff to the Facility 3-A yard on April 5, 2012, and that

[2] The parties raise no evidentiary objections, so the court need not decide the admissibility of the parties' evidence.

he has never escorted an inmate during a housing transfer. ECF No. 66-4 at 3; *see also* ECF No. 66-4 at 5-6 (correctional counselor's duty descriptions).

While at Facility 3-A, plaintiff sent two interview-request forms to Gonzales, a sergeant who supervised Facility 3-A. ECF No. 66-6 at 9:2-10, 10:5-7. On one interview-request form, dated April 6, 2012, plaintiff wrote, "I would like to speak to a supieor [superior] regarding my housing. Thank you!" ECF No. 77 at 11. Plaintiff did not file the other interview-request form with this court, but he testified during his deposition that he "most likely" wrote the same message in an interview-request form dated April 8, 2012. ECF No. 66-6 at 9:15-22. Gonzales states in his declaration that he does not recall receiving an interview-request form or having any personal interaction with plaintiff about housing assignment. ECF No. 66-5 ¶ 3. Gonzales also states that between April 5, 2012, and April 26, 2012, he had no knowledge that plaintiff was staying in the same facility as a documented enemy. *Id*. ¶ 4. On April 26, 2012, plaintiff and Butler had another physical altercation. ECF No. 66-6 at 9:23-25.

## II.    Discussion

A district court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The disputed fact is material if it "might affect the outcome of the suit under the governing law." *See Anderson*, 477 U.S. at 248; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Entitlement to summary judgment depends on the movant's burden at trial: a movant who has the burden of persuasion must present evidence supporting every element of a claim or defense; the movant without that burden can prevail by showing that the opponent cannot prove an element of a claim or defense.[3] The court must view the record in the light most

---

[3] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *compare Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (movant with burden of persuasion at trial), *with Friedman v. Live Nation Merch., Inc*., 833 F.3d 1180, 1188 (9th Cir. 2016) (non-moving party without burden of persuasion at trial).

favorable for the nonmoving party.  *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

Familiar standards govern burden-shifting for summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-27 (1986).  The movant bears the initial burden to show prima facie entitlement to summary judgment.  *See id.*; *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016).  The burden then shifts to the party opposing summary judgment to produce evidence showing a genuine dispute of a material fact.  *See Friedman*, 833 F.3d at 1188.  The movant bears the ultimate burden of persuasion.  *Id.*

### a. Preliminary matters

We begin with two preliminary matters.  First, plaintiff suggests that the court should not consider defendants' motion for summary judgment because the court has already denied one motion for summary judgment.  *See* ECF No. 77 at 1-2.  Plaintiff is mistaken.  A district court may grant a successive motion for summary judgment.  *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010).  Plaintiff also mischaracterizes the procedural history of this case.  Defendants moved for summary judgment earlier in the case, arguing that plaintiff failed to exhaust administrative remedies and that Bugarin had no personal involvement in transferring plaintiff to Facility 3-A.  ECF No. 35-3.  The court denied defendants' motion for summary judgment, adopting the reasoning of United States Magistrate Judge Erica P. Grosjean that plaintiff had exhausted his administrative remedies and that Bugarin escorting plaintiff to Facility 3-A could show Bugarin's personal involvement.  ECF No. 54 at 6-10. However, showing personal involvement differs from showing deliberate indifference.  Judge Grosjean recognized this and warned plaintiff at a status conference after the first summary judgment decision that defendants could move for summary judgment again.[4]  After the status

---

[4] Judge Grosjean explained that plaintiff needed to produce evidence of Bugarin's involvement beyond merely escorting plaintiff to Facility 3-A *See* Audio Recording, Telephonic Status Conference, 1:41:30-1:42:17 (Mar. 7, 2018) ("You need to do it [produce evidence] for yourself.  What I mean is, right now, I know it's going to happen. . . . It will actually be a motion for summary judgment.  They will say that you do not have enough facts to say that defendant Bugarin failed to protect you.  What they will say is all you got is Bugarin personally escorted you and that that's not enough.").  The audio recording does not appear on the docket,

---

conference, she extended the deadline for dispositive motions. *See* ECF No. 61 at 3. Thus, the first summary judgment decision does not preclude the court from considering defendants' successive motion for summary judgment. We now find that the court should grant summary judgment for the reason discussed at the status conference: plaintiff's allegation that Bugarin escorted him to Facility 3-A, without more, does not establish deliberate indifference.

Second, Bugarin argues that no reasonable jury could find that he escorted plaintiff to Facility 3-A. ECF No. 66-2 at 6-7. If no reasonable jury could find by a preponderance of the evidence that Bugarin escorted plaintiff to Facility 3-A, the court should grant summary judgment.[5] The court, however, need not assess plaintiff's evidence because plaintiff could not prevail even if the court were to accept his factual assertions as true, for the reasons discussed below.

### b. Failure-to-protect claim against Bugarin

Plaintiff advances two theories against Bugarin. First, he alleges that Bugarin approved plaintiff's transfer to Facility 3-A. *See* ECF No. 13 at 6; *see also* ECF No. 12 at 8. Second, he alleges that that Bugarin personally escorted plaintiff to Facility 3-A. *See* ECF No. 44; ECF No. 77.[6] Neither allegation, even accepted as true, can withstand summary judgment.

_____

but any party may purchase a copy of the audio recording from the clerk of court by submitted a Form CAED 436.

[5] Although courts rarely weigh evidence at summary judgment, a party cannot withstand summary judgment if the "quantum and quality" of his evidence does not allow a reasonable jury to find in his favor at trial. *See Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *accord Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017). The requisite quantum and quality of evidence depends on the party's burden of proof at trial. *See Anderson*, 477 U.S. at 252 (preponderance of the evidence for libel). The standard for showing deliberate indifference at trial is a preponderance of the evidence. *See Mellen v. Winn*, 900 F.3d 1085, 1101 (9th Cir. 2018); *Clem v. Lomeli*, 566 F.3d 1177, 1183 (9th Cir. 2009); 9th Cir. Model Civ. Jury Instr. 9.27 (2018).

[6] The court has allowed plaintiff to proceed only on the first allegation, and plaintiff has not amended his complaint to include his second allegation that Bugarin escorted plaintiff to Facility 3-A. It might be too late for plaintiff to amend his complaint, as discovery has already closed. ECF No. 34; ECF No. 50; *see also* ECF No. 63 (denial of leave to amend complaint for undue delay and prejudice). For the sake of efficiency, the court should address the merits without assessing whether plaintiff needed to amend his complaint to assert a new fact.

As for plaintiff's first allegation—that Bugarin approved the transfer to Facility 3-A—the parties no longer dispute that Officer Noland requested plaintiff's transfer to Facility 3-A and that Sergeant Rasley approved the transfer.  ECF No. 66-3 ¶¶ 12-13; ECF No. 66-4 at 3, 12.  Indeed, plaintiff does not argue that Bugarin participated in that decision in any way.  *See* ECF No. 77 at 1-4.  Since plaintiff adduces no evidence that Bugarin caused the transfer and the alleged deprivation of his rights, plaintiff cannot prevail on the basis that Bugarin approved his transfer to Facility 3-A.  *See Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (reversing denial of summary judgment when plaintiff failed to show that defendant caused alleged deprivation in Section 1983 action).

Plaintiff cannot withstand summary judgment on his second allegation, either.  Plaintiff contends that Bugarin caused injury—specifically, the attack by Butler three weeks later—by escorting plaintiff to Facility 3-A.  ECF No. 77 at 3.  The court has already found that a reasonable jury could find causation based on Bugarin's escort of plaintiff to Facility 3-A, *see* ECF No. 54 at 6-8, and whether Bugarin escorted plaintiff to Facility 3-A is genuinely disputed, *see* ECF No. 66-4 at 3; ECF No. 77 at 6.  This dispute of fact, however, is immaterial: even if the court were to accept plaintiff's allegation as true, he cannot establish deliberate indifference.

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners," and failure to do so can violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (citation omitted).  The deliberate-indifference standard of *Farmer v. Brennan*, 511 U.S. 825, governs failure-to-protect claims.  *See Hearns*, 413 F.3d at 1040.  Under the deliberate-indifference standard, a defendant violates the Eighth Amendment when two requirements are satisfied: (1) the alleged deprivation is objectively serious; and (2) the defendant is deliberately indifferent to the deprivation.  *See Farmer*, 511 U.S. 825, 834 (1994); *Hearns*, 413 F.3d at 1040.  As for the first requirement, the parties do not dispute that placing an inmate in a housing unit with his documented enemy is an objectively serious deprivation.  The second requirement, deliberate indifference, requires that a defendant subjectively know of and

disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and the defendant must actually draw that inference. *See id*.; *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).

Here, plaintiff cannot show deliberate indifference even if Bugarin escorted plaintiff to a yard within Facility 3-A. According to plaintiff, Bugarin escorted him there on April 5, 2012 because there was no bus scheduled to transport him to a different prison. ECF No. 77 at 6. The first issue is whether Bugarin knew that he was escorting plaintiff to a location where plaintiff would be in contact with a documented enemy, Butler.

Although plaintiff does not address the issue of Bugarin's knowledge at summary judgment, some evidence supports the inference that Bugarin *should have* known that Butler was in Facility 3-A. On January 12, 2012, Bugarin signed a DC 812-A form, designating Butler as plaintiff's documented enemy and indicating in the "Current Location" column that Butler was located in Facility 3-A as of January 12, 2012. *See* ECF No. 12 at 19. Still, the fact that Bugarin signed the form about four months before allegedly escorting plaintiff to Facility 3-A—without more—does not show Bugarin's knowledge that plaintiff faced a safety risk on April 5, 2012. Plaintiff provides no evidence that Bugarin monitored Butler's location after January 12, 2012 or that Bugarin knew Butler's location as of April 5, 2012. Bugarin—a correctional counselor responsible for about 160 inmates—was not plaintiff's counselor when he allegedly escorted plaintiff to Facility 3-A. *See* ECF No. 66-4 ¶¶ 2, 6-7. Furthermore, plaintiff insists that there were "mass transfers . . . rapidly being taken place" at Corcoran and that the decision to move plaintiff to a different facility within Corcoran was "urgent." ECF No. 77 at 6. Under these circumstances, it is doubtful at best that Bugarin, a correctional counselor responsible for many inmates, would have known or remembered for four months the location of a documented enemy of one inmate.

Even if a reasonable jury could find that Bugarin knew Butler's location on April 5, 2012, plaintiff still could not withstand summary judgment because he cannot show that Bugarin knew of and disregarded an "excessive risk" to plaintiff's safety. *See Farmer*, 511

U.S. at 837.  Plaintiff states that Bugarin told him that he would stay in the Facility 3-A yard
until a bus arrived to transport him.  ECF No. 77 at 6.  Plaintiff presents no evidence that
Bugarin knew plaintiff would have a prolonged stay in Facility 3-A or that he perceived
plaintiff's temporary stay in Facility 3-A to present safety issues.  Bugarin's decision to leave
plaintiff in Facility 3-A was negligence at best, not cruel and unusual punishment.  *See
Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should
have perceived but did not, while no cause for commendation, cannot under our cases be
condemned as the infliction of punishment.").  In sum, there is no genuine dispute of any
material fact, and Bugarin is entitled to summary judgment.

### c.  Failure-to-protect claim against Gonzales

Plaintiff proceeds on a failure-to-protect claim under the Eighth Amendment against
defendant Gonzales.  Plaintiff contends that Gonzales ignored his warnings that he was being
housed in the same facility as a documented enemy.  ECF No. 12 ¶¶ 11-13; ECF No. 13 at 6.
The deliberate-indifference standard discussed above applies to plaintiff's failure-to-protect
claim against Gonzales.

Again, plaintiff offers no evidence that Gonzalez knew that plaintiff was staying in
Facility 3-A with a documented enemy.  Plaintiff conceded during his deposition that he never
had any personal interaction with Gonzales.  ECF No. 66-6:11-13.  He testified that he sent
Gonzales two interview-request forms, one on April 6, 2012 and another on April 8, 2012,
asking to discuss "housing."  *Id.* at 8:18-10:7; ECF No. 66-5 ¶ 4.  Those two forms might have
informed Gonzales of an unidentified problem with his housing in the general sense ("I would
like to speak to a superior [superior] regarding my housing"), but they do not show that
plaintiff informed Gonzales of any safety risk.  ECF No. 77 at 11.

After testifying in his deposition that he sent only two interview-request forms, plaintiff
now states for the first time in his declaration that he "wrote several request forms regarding
[his] *housing* to the supieor [superior] SGT but to no avail."  ECF No. 77 at 9 (emphasis
added).  This statement suggests that plaintiff sent interview-request forms to an unidentified
sergeant—in addition to the forms he sent to Gonzales.  Still, the statement does not support a

finding that plaintiff informed Gonzales of any safety risk, so plaintiff's declaration does not raise a genuine dispute. Thus, there is no genuine dispute of any material fact as to plaintiff's claim against Gonzales, and Gonzales is entitled to summary judgment. No other claim remains, and granting defendants' motion for summary judgment concludes this case.

### III. Findings and recommendations

We recommend that the court grant defendants J. Gonzales and J. Bugarin's motion for summary judgment. ECF No. 66. These findings and recommendations are submitted to United States District Judge Lawrence J. O'Neill under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties.[7] That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). A party's failure to object within the specified time may waive rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

### IV. Order

The clerk of court is directed to amend the case caption to reflect the correct spelling of defendant J. Bugarin's last name.

---

[7] In any future filings, plaintiff should bear in mind that he has a duty to be truthful. A court may impose sanctions if a litigant is not truthful in court submissions. *See* Fed. R. Civ. P. 11(b); *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). Certain of plaintiff's statements raise concerns about plaintiff's candor. For example, plaintiff stated in his declaration that he had not timely filed his opposition to defendants' motion for summary judgment because he did not know that defendants could move for summary judgment again. ECF No. 77 at 7. However, when Judge Grosjean explained to plaintiff that his evidence against Bugarin was too thin, she explained that defendants would likely move for summary judgment again. *See* Audio Recording, Telephonic Status Conference, 1:41:30-1:42:17 (Mar. 7, 2018). Plaintiff also testified during his deposition that he took no action regarding his housing in Facility 3-A other than sending two interview-request forms to Gonzales. ECF No. 66-6 at 9:2-10, 10:5-7. However, plaintiff later stated in his declaration that he "wrote several request forms regarding [his] housing to the supieor [superior] SGT . . . ." ECF No. 77 at 9. These statements are difficult to reconcile.

IT IS SO ORDERED.

Dated:    October 24, 2018    

UNITED STATES MAGISTRATE JUDGE